**"O"**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| Glenn Brumsey, | ) | Case No. CV 05-03714-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | ) ) ) ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Glenn Brumsey ("Plaintiff") seeks judicial review of the Commissioner's final decision denying his applications for Supplemental Security Income Benefits ("SSI"). For the reasons stated below, the Commissioner's decision shall be affirmed.

**I.   Factual and Procedural Background**

Plaintiff was born on June 11, 1958. (Administrative Record ("AR") at 99). He has a twelfth grade education and no vocationally relevant work experience. (AR at 22).

///

Plaintiff filed an application for SSI on April 28, 2003, alleging that he has been disabled and unable to work since April 23, 2003, due to hypertension, residuals from a stroke, immobility on the right side and a knee injury. (AR at 22).  The Social Security Administration denied the application and Plaintiff timely filed a request for a hearing.  (AR at 22).  An administrative hearing was held before Administrative Law Judge Peggy Zirlin (the "ALJ") on May 26, 2004.  (AR at 358-73).  Plaintiff, who was represented by counsel, testified at the hearing.  (AR at 359).  A vocational expert also testified.  (AR at 370).  In July 2004, the ALJ issued a decision finding that Plaintiff was not under a disability as defined in the Social Security Act.[1]  (AR at 29).

The ALJ found that Plaintiff suffers from hypertension, status post basal ganglia hemorrhage, and mild right hemiparesis, but that Plaintiff did not have an impairment or combination of impairments listed in or medically equal to one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4 ("the Listings").  (AR at 28-29).  The ALJ further found that Plaintiff was capable of performing a limited range of sedentary work activities, which will be described in greater detail later in this Report.  (AR at 28). Relying on the testimony of a vocational expert, the ALJ concluded that with this residual functional capacity, Plaintiff was capable of performing work that exists in significant numbers in the economy, including that of masker, surveillance system monitor, and call out operator. (AR at 28-29).  On April 6, 2005, the Appeals Council denied review.  (AR at 4-6). Plaintiff then commenced this action for judicial review.

---

[1] The Court can't decipher the exact date of the decision.  It appears that the decision may have been issued on July 30, 2004.

The parties filed a Joint Stipulation of disputed issues on February 28, 2006. Plaintiff raises the following arguments:

1. The Appeals Council erred by failing to remand based on the submission of new evidence from Plaintiff's treating physician (Joint Stipulation at 7-8);[2] and

2. The ALJ erred by relying inappropriately on the testimony of the Vocational Expert (Joint Stipulation at 11-13).

Plaintiff seeks remand for payment of benefits or, in the alternative, remand for further development of the record. (Joint Stipulation at 20). The Commissioner requests that the ALJ's Decision be affirmed. *Id*. The Joint Stipulation has been taken under submission without oral argument.

## II. **Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401; *Reddick*

---

[2] Plaintiff articulates this claim in the introduction and headings as one of a failure of the ALJ to give appropriate weight to the opinion of the treating physician, but the analysis focuses exclusively on the new evidence (by a treating physician) submitted for the first time to the Appeals Council. The Court construes this as a new evidence claim.

*v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). It is more than a scintilla, but less than a preponderance. *Reddick*, 157 F.3d at 720. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. *Id.* at 720-721.

**III. <u>Discussion</u>**

    **A.   The Evidence Submitted After the ALJ Hearing Does Not Require Remand**

Plaintiff asserts that he presented new evidence to the Appeals Council after the hearing that changed the weight of the evidence and requires remand for reconsideration. This new evidence consists of his treatment records from the Inglewood Medical & Mental Health Services clinic dating from December 8, 2003. Specifically, Plaintiff argues that a statement of Dr. Stanislaus Kinota, M.D., dated March 15, 2004 and hand-written on a prescription form, ought to be given great weight. In that note, Dr. Kinota identifies Plaintiff as a 45-year-old male with a history of hypertension and status post stroke (in April 2003) currently suffering from right-sided weakness. Dr. Kinota recommends that Plaintiff be excused from one year of work activity. (AR at 320).

The remainder of the notes, also contained on prescriptions forms and in form-like progress notes, show that Dr. Kinota prescribed the use of several medications and a cane. (AR at 321-24). On April 12, 2004, Dr. Kinota found a decreased range of motion in the spine, extremities, low back, and decreased motor strength in the right upper and lower

extremities. (AR at 342).  On January 9, 2004, Dr. Awad, of the Inglewood Clinic, requested emergency care because of Plaintiff's high blood pressure reading. On June 8, 2004, Plaintiff received treatment for a hypertensive emergency at the Hubert H. Humphrey Comprehensive Health Center. (AR at 349-53.) Plaintiff claims that Dr. Kinota's opinions were supported by Plaintiff's other medical records, demonstrating longitudinal difficulties with range of motion and strength. Consequently, Plaintiff asserts, the Appeals Council should have remanded, and so should this Court.

Pursuant to 20 CFR § 404.970(b), the Appeals Council shall consider new and material evidence "if it relates to the period on or before the date of the administrative law judge hearing decision [and if it] finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence of record." To merit remand, Plaintiff must show that the new evidence is material and that he had good cause for failing to incorporate it into the record in the prior proceedings. *See Allen v. Secretary of Health & Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984).  New evidence is material if (1) the evidence bears "directly and substantially" on the matter in dispute; and (2) that there is a "reasonable possibility" that the new evidence would have changed the outcome of the administrative hearing. *See Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001); *see also Booz v. Secretary of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984)(new evidence is material if there is a reasonable possibility that it would have changed the outcome of the ALJ's determination).

In this case, the Appeals Council did not err in declining to remand based on the new evidence presented to it. In its decision, the Appeals Council explained the decision in the following way: "We found

that this information does not provide a basis for changing the Administrative Law Judge's decision.  The Council notes the brief opinion by Dr. Kinota recommending a one year "excuse" from work.  However, the [ALJ] had considered the residual effect of [Plaintiff's] stroke.  Dr. Kinota's opinion is not persuasive for a greater level of dysfunction than assessed in the decision." (AR at 6).  Although it did not say so explicitly, the Appeals Council essentially found that the new evidence was not "material" because there was not a reasonable possibility that the new evidence would have changed the outcome of the administrative hearing.

The Court notes that the Commissioner alone determines "disability" under the Social Security Act. *See* 20 C.F.R. §§ 404.1527(e) and 416.927(e) (2003); Social Security Ruling 96-5p.  Thus, a treating physicians' opinion that a claimant is disabled is not conclusive of disability under the Social Security Act. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  The Appeals Council reasonably described Dr. Kinota's opinion as "brief" and found that the ALJ had already considered the residual effects of the Plaintiff's stroke. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)(An "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") There was nothing in Dr. Kinota's opinion, or the other new evidence, that showed Plaintiff was any more limited than found by the ALJ. (AR at 6). Dr. Kinota did not provide a specific assessment of Plaintiff's abilities. *See Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ permissibly rejected doctor's opinion as conclusory because it did not give a specific assessment of claimant's functional capacity; opinion stated diagnosis and concluded claimant was disabled.)

Dr. Kinota noted Plaintiff's diagnosis and the right side weakness but did not explain why Plaintiff should be excused from all work activity for one year. (AR at 320).

As the Appeals Council found, the ALJ considered Plaintiff's limitations and assessed his residual functional capacity appropriately. (AR at 6, 23-25). The ALJ's findings were supported by substantial evidence. To assess Plaintiff's functioning, the ALJ relied on the opinions of a consultative examiner and a California state agency medical consultant. Neurologist Sarah Maze, M.D., who examined Plaintiff in August 2003, and P. Boetcher, M.D., the reviewing physician, provided detailed functional capacity assessments that considered Plaintiff's right-sided deficits. (AR at 108-12, 116-23). Dr. Kinota's opinion, on the other hand, lacked detail, was conclusory, and did not provide any explanation of why an entire year of absence from work was necessary. The ALJ also considered the fact that Plaintiff has been consistently noncompliant with prescribed medication, that the records did not support the severe medication side-effects that he complained of, and that the record shows ongoing substance abuse through at least January 2004 about which Plaintiff was not forthcoming at the hearing. (AR at 25-26). The ALJ also noted that the Plaintiff was not motivated to work before his stroke, not having worked for the prior 15 years. (AR at 26). In combination, this constituted substantial evidence supporting the ALJ's functional assessment, the weight of which was not materially changed by the new evidence submitted by Plaintiff after the hearing.

**B.   The ALJ Appropriately Relied On The Testimony Of The Vocational Expert**

Plaintiff asserts that the ALJ inappropriately relied on Vocational

Expert ("VE") testimony because the expert failed to explain her deviations from the Dictionary of Occupational Titles (DOT).

The VE testified that a hypothetical person with Plaintiff's limitations[3] could do unskilled, sedentary jobs such as masker, surveillance system monitor, and call out operator. The VE cited the DOT code sections that corresponded to each of these occupations. After careful questioning by the ALJ, the VE explained that the finger dexterity required by the job descriptions could be done by Plaintiff, despite his physical limitations, because while he is limited on the right-hand side of his body, he is left-hand dominant and his left hand functions well. (AR at 371). Most of the work, according to the VE, could therefore "be done using only the dominant hand." (AR at 371).

Plaintiff asserts that the occupation of masker requires frequent reaching, handling and fingering, and that he therefore could not perform this occupation given the functional limitations found by the ALJ. (DOT § 715.687-086). However, as noted above, the VE found that Plaintiff could perform the motor skills required by this occupation with his functional left hand. Plaintiff concedes that the occupation of surveillance-system monitor comports with his residual functional capacity assessment. (DOT § 379.367-010). However, with respect to call-out operator, Plaintiff contends that the requirement for average

---

[3] Plaintiff was found capable of performing a limited range of sedentary work activities, including the ability to: lift and carry up to 10 pounds frequently and up to 25 pounds occasionally, stand and walk 2 hours in an 8-hour workday, sit six hours in an 8-hour workday, occasional push/pull foot controls with the right lower extremity, no fine hand controls with the right upper extremity, no fine fingering with right upper extremity, slight slowness with manipulating keyboards or tools with the right hand, no ladder, rope, or scaffold climbing, no balancing, occasional ramp and stair climbing, occasional stooping, kneeling, crouching, crawling, and not even moderate exposure to hazards such as unprotected heights and hazardous machinery. (AR 28).

motor coordination and finger dexterity is beyond the restrictions imposed by the ALJ's hypothetical. (DOT § 237.367-014). Again, however, the Court finds that the VE did address this deviation by emphasizing that Plaintiff could perform the required level of motor skills with his left hand.

Plaintiff also contends that these occupations do not exist in significant numbers in the region where he lives or in several regions of the country as required by the Social Security Act, 42 U.S.C. § 423(d). The Social Security Act requires that an occupation exist in significant numbers in the national economy, and defines "national economy" as the region where the person lives or in several regions of the country. Plaintiff claims that the ALJ, by reporting a homogenous number of jobs nationwide without an indication of regional numerosity, "violate[d] the spirit and intent of the Act." (JS at 12). The Court disagrees.

In her decision, the ALJ stated that there are 6,000 masker jobs, 13,000 surveillance system monitor positions and more than 11,000 call out operators in the national economy. (AR at 27). Plaintiff complains the ALJ did not specify the number of these jobs located in the "greater Los Angeles community." (JS at 12). Plaintiff asserts that the number located in this area is "paltry" and "de minimis" and cites two employment/occupation sources to demonstrate that in total there are 1,538 such jobs combined in the Los Angeles region where Plaintiff lives. (JS at 12-13). This is not a "significant number," according to Plaintiff.

However, the Commissioner is not required to show that job opportunities exist in a claimant's local economy. See 20 C.F.R. § 416.966(a)(1)(2005) (it does not matter whether work exists in the

immediate area where the claimant lives). As for the multi-regional incidence requirement, this was satisfied by the VE's testimony about the number of jobs in the national economy as a whole (in total, 30,000). The Ninth Circuit Court of Appeals has never established a minimum number of jobs necessary to constitute a "significant number," but has upheld as significant, job incidence rates lower than that identified in this case. *Thomas v. Barnhart*, 278 F.3d 947 (9th Cir. 2002) (finding 1,300 jobs significant); *Barker v. Sec'y of HHS*, 882 F.2d 1474, 1478-79 (9th Cir. 1989) (finding 1,266 jobs within the parameters of "significant numbers"). The Court finds that under Plaintiff's own calculus, even assuming *arguendo* that there are only 1,538 available jobs, this is a significant number and satisfies the Commissioner's burden.[4] Therefore, the Court finds that the ALJ appropriately relied on the testimony of the Vocational Expert in her decision.

**IV.  CONCLUSION**

For the reasons stated above, it is **ORDERED** that the decision of the Commissioner be affirmed and this action be dismissed with prejudice.

DATED: March 30, 2006         */S/ Marc L. Goldman*
                              _____
                              MARC L. GOLDMAN
                              United States Magistrate Judge

---

[4] The Court recognizes that Plaintiff argued that the number was far smaller because the Plaintiff sought to disqualify two of the three job occupations as exceeding the residual functional capacity articulated by the ALJ. However, since the Court did not credit this argument, the Court will consider the numerosity of all three suggested jobs in its analysis.